**S. AMANDA MARSHALL, OSB # 95347**
United States Attorney
District of Oregon
**LESLIE J. WESTPHAL, OSB #83344**
leslie.westphal@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1027
Facsimile: (503) 727-1117

FILED24 AUG '12  9:38USDC-ORP

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

**UNITED STATES OF AMERICA,**

**'12-MC-298**

Petitioner,

v.

**MEMORANDUM IN SUPPORT OF
PETITION TO ENFORCE DEA
ADMINISTRATIVE SUBPOENA**

**STATE OF OREGON PRESCRIPTION
DRUG MONITORING PROGRAM,**

Respondent.

Petitioner, by S. Amanda Marshall, United States Attorney for the District of Oregon, and

through Leslie J. Westphal, Assistant United States Attorney for the District of Oregon, submits

this memorandum in support of a petition to enforce an administrative subpoena, pursuant to 21

U.S.C § 876(c).[1] The issue posed by this petition is whether an administrative subpoena, properly executed and served under federal law, must also meet inconsistent requirements of Oregon law. Petitioner contends that fundamental Supremacy Clause principles require preemption of state legislation that is in conflict with federal law. Accordingly, this Court should order respondent to comply with the administrative subpoena.

BACKGROUND

On January 5, 2012, Drug Enforcement Administration (DEA) Group Supervisor Lori Cassity issued DEA Subpoena No. RF-12-237101, Exhibit A, pursuant to 21 U.S.C. § 876. On January 6, 2012, Investigator Tyler Warner served the subpoena on the Oregon Prescription Drug Monitoring Program (PDMP), Respondent in this action, in accordance with the requirements of 21 U.S.C. § 876(b). The subpoena requested a "Physician Profile for all Schedule II-V controlled substance prescriptions written by [the subject of the investigation] from 6/01/2011 through 1/06/2012."[2] The compliance date for the subpoena was January 20, 2012. Warner Declaration, p. 2.

To date, the Respondent has not complied with the subpoena, and through counsel, has advised that it will not comply with the subpoena because to do so would violate Oregon law. Warner Declaration, p. 2. Respondent cites Oregon Revised Statute, Section 431.966 as the basis for its noncompliance, which "forbids the agency from disclosing the requested information unless

---

[1] "In the case of contumacy by or refusal to obey a subpena [sic] issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena. The court may issue an order requiring the subpenaed person to appear before the Attorney General to produce records, if so ordered, or to give testimony touching the matter under investigation." 21 U.S.C. § 876(c).

[2] Because the investigation is ongoing, the subject's name is not included in this petition.

pursuant to 'a valid court order based on probable cause and issued at the request of a federal, state

or local law enforcement agency engaged in an authorized drug-related investigation involving a

person to whom the requested information pertains.'" Oregon Department of Justice Letter, Ex. B.

## ARGUMENT

### I.      THE DEA ADMINISTRATIVE SUBPOENA IS VALID.

Congress may authorize the executive branch to issue subpoenas for the production of

records and information necessary to the performance of agency functions. *Oklahoma Press*

*Publishing Co. v. Walling*, 327 U.S. 186, 209 (1946). Such subpoenas may be judicially enforced

upon consideration of: "(1) whether Congress has granted the authority to investigate; (2) whether

procedural requirements have been followed; and (3) whether the evidence is relevant and material

to the investigation." *United States v. Golden Valley Elec. Ass'n*, 11-35195, 2012 WL 3185827,

at *3 (9th Cir. Aug. 7, 2012) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.,* 719 F.2d

1426, 1428 (9th Cir. 1983) (en banc)).[3]

Judicial enforcement is appropriate in the instant matter. First, the DEA investigation is for

---

[3] In its recent decision, *United States v. Golden Valley Electric Association*, the Ninth Circuit
articulated an additional requirement: that "a fourth amendment reasonableness inquiry must also
be satisfied." *Golden Valley*, 2012 WL 3185827, at *3 (citing *Reich v. Mont. Sulphur & Chem.
Co.*, 32 F.3d 444 n.5 (9th Cir. 1994)). "[I]t is sufficient [for Fourth Amendment purposes] if the
inquiry is within the authority of the agency, the demand is not too indefinite and the information
sought is reasonably relevant. The gist of the protection is in the requirement, expressed in terms,
that the disclosure sought shall not be unreasonable." *Id.* at *5 (quoting *Mont. Sulphur*, 32 F.3d at
448) (alterations in original). "[T]he requirement of reasonableness . . . comes down to [whether]
specification of the documents to be produced [is] adequate, but not excessive, for the purposes of
the relevant inquiry." *Id.* (quoting *Oklahoma Press*, 327 U.S. at 209). "A 'subpoena should be
enforced unless the party being investigated proves the inquiry is unreasonable because it is
overbroad or unduly burdensome.'" *Id.* (quoting *Children's Hosp.*, 719 F.2d at 1428). The DEA
administrative subpoena seeks a Physician Profile for controlled substance prescriptions written
by a single physician, for a limited time period. Warner Declaration, p. 1–2. Because the PDMP
has not shown the request to be overbroad or unduly burdensome, the Fourth Amendment
reasonableness requirement has been satisfied.

an authorized purpose within the power of Congress. Congress specifically authorized

investigations of the illegal distribution of controlled substances in the Comprehensive Drug

Abuse Prevention and Control Act, and provided authority for the DEA to issue subpoenas in

furtherance of such investigations. Title 21, United States Code, Section 876(a) grants the DEA the

power to compel testimony or "require the production of any records . . . which the Attorney

General finds relevant or material to the investigation" of any violation of the Comprehensive

Drug Abuse Prevention and Control Act.[4] "This statute was intended as a comprehensive federal

program to place certain drugs and other substances under strict federal controls to be administered

by the Attorney General." *United States v. Hossbach*, 518 F. Supp. 759, 765 (E.D. Pa. 1980). The

Ninth Circuit has acknowledged that "[t]he statute gives the Attorney General the authority to

issue administrative subpoenas to investigate drug crimes." *Golden Valley*, 2012 WL 3185827,

at *3.

Second, all procedural requirements have been followed. The Attorney General may

delegate the authority to issue administrative subpoenas to DEA law enforcement personnel. 21

U.S.C. § 878(a)(2). Authority to issue administrative subpoenas has been further delegated to DEA

Group Supervisors. 28 C.F.R. Pt. 0, Subpt. R, App. § 4(a). In the instant matter, the administrative

---

[4] This includes the power to request documents which constitute protected health information. *See*
45 C.F.R. § 164.512(f). The DEA's request meets the requirements of 45 C.F.R.
§ 164.512(f)(1)(ii)(C), which permits disclosure by the responding entity upon administrative
subpoena when "[t]he information sought is relevant and material to a legitimate law enforcement
inquiry, . . . [t]he request is specific and limited in scope to the extent reasonably practicable in
light of the purpose for which the information is sought; . . . and [d]e-identified information could
not reasonably be used." In the instant case, the information sought is relevant to a legitimate DEA
inquiry. The request was limited in scope insofar as it only sought a Physician Profile for
prescriptions of specifically classified controlled substances prescribed by the subject of the
investigation. Finally, redacted information could not have reasonably been used in the
investigation. *See* Warner Declaration, p. 1–2.

subpoena was validly issued by DEA Group Supervisor Lori Cassity pursuant to these provisions.

Finally, the documents sought are relevant and material to the investigation the DEA is conducting. The Ninth Circuit has acknowledged that "[t]he relevance requirement is 'not especially constraining,'" *Golden Valley*, 2012 WL 3185827, at \*3 (quoting *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009)), and a court "must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency," *id.* (quoting *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001)). The DEA is investigating a physician for illegal distribution of controlled substances. The subpoena requests a Physician Profile which details the prescription of certain controlled substances written by the subject. Warner Declaration, p. 1–2. Data regarding a physician's prescription writing is plainly relevant to an investigation of that physician's potentially illegal distribution of controlled substances; and even then, a physician's conduct need not be proven illegal: "The information subpoenaed does not need to be relevant to a crime; in fact, it may be used to dissipate any suspicion of a crime. The information subpoenaed need only be relevant to an agency investigation." *Golden Valley*, 2012 WL 3185827, at \*4 (citing *Fed. Express Corp.*, 558 F.3d at 854). Because the requested information is relevant to a legitimate DEA investigation, the subpoena should be enforced.

## II. STATE LAW MAY NOT EXCUSE A RESPONDENT FROM COMPLIANCE WITH FEDERAL LAW BECAUSE THE FEDERAL STATUTE PREEMPTS STATE LAW.

Through its counsel, the PDMP stated that it will not comply with the subpoena because compliance would violate state law. Warner Declaration, p. 2. Specifically, the PDMP asserts that Or. Rev. Stat. § 431.966(2)(a)(C) does not allow for compliance with an administrative subpoena, absent "a valid court order based on probable cause and issued at the request of a federal, state or

Memorandum in Support of Petition to Enforce DEA Administrative Subpoena          Page 5

local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains." To the extent this Oregon statute precludes compliance with a validly issued DEA administrative subpoena, or seeks to set a higher standard for production than that which is required by federal statute, it is in conflict with federal law. Under such circumstances, federal law preempts the state statute, and the subpoena should be enforced regardless of whether it complies with state law.

The power of Congress to preempt state law is a fundamental principle underlying the Supremacy Clause of the United States Constitution. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Preemption of state law by federal law may be apparent from the express terms of a federal statute or it may be implicit in the statute. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). Implicit preemption occurs when: (1) Congress intends federal law to "occupy the field," or (2) "state law is naturally preempted to the extent it conflicts with a federal statute." *Crosby*, 530 U.S. at 372.

The Controlled Substances Act, at 21 U.S.C. § 903, expressly sets forth when it should preempt state law, and mandates preemption when a conflict exists:

No provision of [the Act] shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision . . . and that State law* so that the two cannot consistently stand together.

21 U.S.C. § 903 (emphasis added). This provision "disclaims field pre-emption, and affirmatively *prescribes* federal pre-emption whenever state law creates a conflict." *Gonzales v. Oregon*, 546 U.S. 243, 289–90 (2006) (emphasis in original). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually

conflicts with federal law." *Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 713 (1985) (internal quotation marks and citations omitted).

Therefore, as a matter of both statutory and Constitutional analysis, the issue before this court is whether Oregon's statute implicitly conflicts with the federal statute authorizing administrative subpoenas. Preemption must occur when "compliance with both federal and state regulations is a physical impossibility" or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53 (1982) (internal quotation marks and citations omitted).

## A. THE OREGON STATUTE'S PROBABLE CAUSE REQUIREMENT EXPRESSLY CONFLICTS WITH TITLE 21, UNITED STATES CODE, SECTION 876.

Oregon Revised Statute, Section 431.966 (2)(a)(C) creates a positive conflict with Title 21, United States Code, Section 876(a). The federal statute permits the DEA to issue administrative subpoenas in conjunction with both criminal investigations and civil enforcement matters without a showing of probable cause. The state provision, on the other hand, requires a specific finding of probable cause. The imposition of a probable cause requirement on administrative subpoenas would prevent the DEA from acquiring information through properly issued subpoenas when the investigation had not developed probable cause.

"The Supreme Court has refused to require that an agency have probable cause to justify issuance of a subpoena." *Golden Valley*, 2012 WL 3185827, at *6. "The requirement of 'probable cause, supported by oath or affirmation' literally applicable in the case of a warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the

inquiry." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946) (finding probable cause

was unnecessary for an administrative subpoena issued pursuant to a Department of Labor

investigation authorized by Congress). *See also United States v. Powell*, 379 U.S. 48, 57 (1964)

(finding probable cause was unnecessary for the Internal Revenue Service to issue an

administrative summons). Because the Oregon law requires a showing of probable cause to obtain

the information requested in the administrative subpoena, yet a federal agency need not make a

showing of probable cause to justify the issuance of an administrative subpoena, the Oregon law

stands in contravention of the execution of the subpoena, frustrating the operation of 21 U.S.C.

§ 876 and refusing its provisions their natural effect. *See Crosby*, 530 U.S. at 373. Therefore, the

laws are in direct conflict and the Oregon law stands as an obstacle to the DEA's congressionally

mandated efforts to accomplish its investigation.

B. THE OREGON STATUTE'S REQUIREMENT FOR A COURT ORDER IS NOT
MERELY AN ADDITIONAL BURDEN ON THE AGENCY, BUT RATHER AN
IMPERMISSIBLE OBLIGATION THAT CONFLICTS WITH TITLE 21, UNITED
STATES CODE, SECTION 876 AND THE DEA'S CONGRESSIONALLY
MANDATED OBJECTIVE.

The DEA, in conjunction with an investigation, may issue an administrative subpoena to

obtain information regarding controlled substances without a court order,[5] but Or. Rev. Stat.

§ 431.966(2)(a)(C) requires a court order to obtain controlled substances records from PDMP.

Therefore, the Oregon law unlawfully encumbers the DEA's investigatory mandate.

"If the purpose of [a federal] act cannot otherwise be accomplished—if its operation within

its chosen field else must be frustrated and its provisions be refused their natural effect—the state

---

[5] *See* 28 C.F.R. Pt. 0, Subpt. R, App. § 4(a). Among others, "DEA Special Agent Group
Supervisors . . . are authorized to sign and issue subpoenas with respect to controlled substances,
listed chemicals, tableting machines or encapsulating machines under 21 U.S.C. 875 and 876 in
regard to matters within their respective jurisdictions." *Id.*

law must yield to the regulation of Congress within the sphere of its delegated power." *Crosby v.*

*Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Savage v. Jones*, 225 U.S. 501,

533 (1912)). Therefore, in the instant matter, there must be a determination if the provisions of the

Controlled Substances Act (CSA)[6]—including its allowance for the issuance of administrative

subpoenas without a court order—can be given their natural effect, in light of the Oregon law's

requirements:

> The Controlled Substances Act was intended as a comprehensive federal program
> to place certain drugs and other substances under strict federal controls to be
> administered by the Attorney General. The Act provided the Attorney General with
> broad administrative duties as well as enforcement duties, both criminal and
> civil. . . . To assist the Attorney General in enforcing the Controlled Substances
> Act, Congress granted him the authority to issue investigative, or administrative
> subpoenas.

*United States v. Mountain States Tel. & Tel. Co., Inc.,* 516 F. Supp. 225, 228–29 (D. Wyo. 1981).

With regard to that subpoena power:

> [The CSA] authorizes the Attorney General to . . . compel production of records or
> other tangible things which constitute or contain evidence and upon which he has
> made a finding as to materiality or relevancy. . . . [The CSA] provides that the
> Attorney General may designate the person to serve the subpena, . . . [and] refusal
> to respond to a subpena allows the Attorney General to invoke court aid . . . .

H.R. Rep. No. 91-1444, at 4620–21 (1970).

A requirement that the DEA obtain a court order to validate its subpoena is more than a

nuisance to the investigative process; it is in conflict with Congress' intention to allow the DEA to

issue investigatory subpoenas without the burden of additional requirements. Furthermore, 21

U.S.C § 876(c) plainly allows for judicial review "[i]n the case of contumacy by or refusal to obey

a subpena issued to any person . . . to compel compliance with the subpoena"—the very allowance

---

[6] The Controlled Substances Act is Title II of the Comprehensive Drug Abuse Prevention and
Control Act, Pub. L. No. 91-513, 84 Stat. 1236.

of which suggests that a court order is not otherwise required, nor should it be. Therefore, the state's requirement of a court order expressly conflicts with the federal statute's allowance that authorizes federal agencies to issue administrative subpoenas without a court order, and thus the federal law must preempt the state law.

## C. OTHER COURTS, FACED WITH SIMILAR STATE RESTRICTIONS ON SECTION 876 ADMINSITRATIVE SUBPOENAS, HAVE FOUND EXPRESS CONFLICTS REQUIRING PREEMPTION.

The District of Colorado was faced with a similar question when a Section 876 administrative subpoena was served on the Colorado Board of Pharmacy. *United States Department of Justice v. Colorado Board of Pharmacy*, No. 10-cv-01116, 2010 WL 3547896 (D. Colo. Sept. 3, 2010), *adopting* 2010 WL 3547898 (D. Colo. Aug. 13, 2010). The subpoena sought information about a provider's prescription of controlled substances. *Colorado Board of Pharmacy*, 2010 WL 3547898, at *1. Colorado's law prohibited release when requested information was not specific to a particular individual, and the Board of Pharmacy argued it could not comply with a subpoena lacking that specificity. *Id.* at *2. Because the state law stood "as an obstacle to the DEA's efforts to accomplish its investigation," the Colorado statute unreasonably restricted the DEA's ability to conduct its investigation and therefore was preempted by 21 U.S.C. § 876. *Id.* at *4.

*United States v. Michigan Department of Community Health*, No. 1:10-MC-109, 2011 WL 2412602 (W.D. Mich. June 9, 2011), similarly found that a confidentiality law restricting disclosure of patient names was preempted by 21 U.S.C. § 876 because it stood as an obstacle to the federal law's subpoena power to obtain relevant drug investigation information, and was "nullified to the extent it conflicts with the federal law by preventing the federal government's

exercise of its subpoena power under § 876." *Id.* at *13. The court did not limit the scope of the subpoena to information that was allowed by state law, but rather required that the state law yield to § 876.

A similar result is compelled here. The United States does not contend that it presently has a court order or articulable probable cause to support the administrative subpoena at issue, nor does it need them. Accordingly, imposing the requirements of Oregon law on this administrative subpoena will frustrate a legitimate DEA investigation; one which Congress clearly authorized, and for which it provided the subpoena as a means to carry out an investigation without the aid of a court. Under these circumstances, Or. Rev. Stat. § 431.966(2)(a)(C) must be preempted, and this court should order enforcement of the administrative subpoena.

D. THIS MATTER SHOULD BE DECIDED ON THE BASIS OF PREEMPTION AND NOT MERELY THE SUBPOENA'S VALIDITY, OTHERWISE EACH FUTURE REQUEST TO THE PDMP WILL REQUIRE AN ADDITIONAL COURT ORDER AND FURTHER EXPENDITURE OF JUDICIAL RESOURCES.

In the interest of judicial efficiency, it is imperative that this court decide the question of preemption, as a court order pursuant to 21 U.S.C. § 876(c) absent guidance regarding preemption will result in unnecessary future litigation whenever additional administrative subpoenas are issued to the PDMP. Or. Rev. Stat. § 431.966(2)(a)(C), as interpreted by the PDMP, substantially inhibits and frustrates the purpose of the CSA, and results in the unnecessary use of government resources in order to comply with the state law, given the more permissive allowance of federal law to obtain administrative subpoenas without court order. The DEA relies on the PDMP's database as a crucial investigatory tool, and given current law enforcement objectives, it expects to issue numerous administrative subpoenas of a similar nature to the PDMP each year. Cassity Declaration, p. 2. Therefore, to avoid the need for the issuance of an order and use of the court's

Memorandum in Support of Petition to Enforce DEA Administrative Subpoena     Page 11

resources upon each administrative subpoena issued to the PDMP, it is imperative that the court decide the question of preemption at this juncture.

III.   CONCLUSION

Therefore, the United States petitions this Court for an order finding that Oregon Revised Statute, Section 431.966 (2)(a)(C) is preempted by Title 21, United States Code Section 876, to the extent the Oregon statute requires a court order or a showing of probable cause as antecedent and additional requirements to compliance with federal administrative subpoenas. In addition, Petitioner asks the court to order Respondent to comply with all federal administrative subpoenas in their entirety.

Dated this _____ day of August, 2012.

Respectfully Submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon

LESLIE J. WESTPHAL
Assistant United States Attorney